## MATTAR *v.* WATHEN.

Opinion delivered May 29, 1911.

1. SALE OF CHATTELS—LIEN FOR PURCHASE MONEY.—A vendor of personal property who retains the possession thereof has a lien thereon for the unpaid purchase money which he may enforce if there is no contract to the contrary. (Page 333.)

2. PLEDGE—EFFECT.—Where goods are pledged by their vendee to the vendor for their unpaid purchase money, the vendor will have a lien thereon in the nature of an equitable mortgage. (Page 333.)

3.  HUSBAND AND WIFE—HUSBAND'S LIABILITY ON WIFE'S CONTRACTS.—A husband will not be liable for the purchase money of goods bought by his wife solely upon her own credit. (Page 334.)

4.  SAME—HUSBAND'S LIABILITY FOR WIFE'S DEBTS.—A husband will not be liable for goods sold to his wife after the vendor was notified by the husband that he would not be liable therefor. (Page 335.)

Appeal from Garland Chancery Court; *Alphonso Curl*, Chancellor; affirmed.

*E. W. Rector*, for appellant.

1.  Treating the transaction as a whole, beginning with the first purchases made and extending to the last, appellants have a lien for the purchase money on the whole amount of goods purchased, under the statute. Kirby's Dig. § § 4966, 4967.

2.  By virtue of Mrs. Wathen's agreement that appellants could have a lien on all the goods for the unpaid purchase money, and of the fact that they were permitted to retain possession of the goods, appellants had a lien thereon enforcible in equity.

3.  If there be no lien for purchase money, nor by virtue of the agreement, and if the settlement by Mrs. Wathen by note and check ended all transactions up to that date and her purchasers thereafter are treated as a separate transaction, then the principle laid down in *Ewing Merkel El. Co.* v. *Lewisville L. & W. Co.*, 92 Ark. 594, would apply, and appellants would have the right to set off against appellee's claim for damages for conversion the amount due appellants by virtue of the breach of contract by Mrs. Wathen in not taking and paying for the last bill of goods.

*Greaves & Martin*, for appellees.

As to the bill of goods amounting to $716, the testimony shows that they were paid for by Charles Wathen and belonged to him. There is no evidence of any gift thereof from him to Mrs. Wathen, and she had no interest in the goods which could be held by appellants for payment of purchases made by her.

Even if Mrs. Wathen had made the oral agreement with appellants, which is denied, it could not affect the goods which belonged to Charles Wathen.

FRAUENTHAL, J. This was an action of conversion instituted in the circuit court for the recovery of the value of a lot of goods and merchandise. It was alleged in the complaint that the plaintiffs had purchased from the defendants the property

sued for, and had left same in their care for a time, under an agreement that they would store same free of charge and ship them on demand, and that the defendants had refused to turn the goods over, although demand had been duly made therefor.

The defendants denied that they had sold the goods to the plaintiff, Charles Wathen, but alleged in their answer that they had sold same, together with other goods, amounting in the aggregate to $2,565.35, to his wife, upon which partial payments had been made, leaving a balance of $1,576.25 still due, and that the goods had been pledged or possession thereof turned over to them by her as security for the payment of the entire purchase money of all the goods. They asked for a judgment for the remainder of the purchase money against the wife of Charles Wathen, who had been made a party to the suit, and that a lien be declared upon all the goods therefor.

Upon motion of the defendants the cause was transferred to the chancery court. Upon a trial of the cause in that court, the chancellor found that the goods sued for were sold by the defendants to plaintiff, Charles Wathen, and that he was the owner thereof. It also found that certain of said goods had been delivered by defendants, and rendered judgment in favor of said Charles Wathen for the value of the remainder of the goods, which defendants had retained and converted.

The question involved in this case is chiefly, if not entirely, one of fact, and that is, whether or not plaintiff Charles Wathen purchased and paid for the goods sued for and thereby became the owner thereof.

Charles Wathen was a resident of Denver, Colorado, and during 1907, in company with his wife, who was an invalid, visited the city of Hot Springs, Arkansas, to obtain for her the benefit of the waters of that health resort. The defendants were engaged in business at Hot Springs, conducting an auction store, at which they sold rugs, statuary and Oriental goods. In February, 1907, Charles Wathen purchased from the defendants a bill of goods amounting to $70.70, and paid for same. At the time these goods were purchased his wife was with him and made the selections herself, but the goods were charged on the books of the defendants to Charles Wathen, and they were actually sold to him. He left these goods in the possession of the defendants

under an agreement made with them that they would store same, and any other goods which he might purchase of them, free of charge, and would ship them to him at Denver upon his demand. Later in the same month he returned to Denver, leaving his wife in Hot Springs. Thereafter, and up to April, 1907, his wife made purchases of goods from the defendants, which with the said bill of $70.70, amounted in the aggregate to $700.95, which goods were also left in the possession of the defendants under the above agreement.

The testimony on the part of the plaintiff tended to prove that all these goods were charged upon the books of the defendants to Charles Wathen, and on April 13, 1907, the defendants sent to him at Denver an itemized statement of the account for all these goods, which was made out against him, and requested payment of the balance due thereon. He wrote the defendants refusing to pay therefor, and later in April went to Hot Springs and, in company with his wife, saw the defendants and attempted to get them to take ten per cent. of the costs of the goods for their expense and trouble and to retain all of the goods. This the defendants refused to do, but insisted on payment thereof, and Wathen then notified them that he would not be responsible for any other purchases made by his wife from them. In September, 1907, Wathen paid to the defendants the balance which was due upon said goods which had been charged to him, amounting to $700.95; he made payment thereof partly by check drawn by him on a bank in Denver, and partly by a note executed by him which he subsequently paid. Possession of the goods was still retained by the defendants, and Wathen testified that he left same with them under the above agreement that they would be kept by them in storage free of charge, and would be shipped to him at any time upon his demand therefor.

Plaintiff's wife remained in Hot Springs for several months thereafter, and during the fall of 1907 and spring of 1908 made purchases from time to time from the defendants at their auction house. At the time these latter goods were purchased by Mrs. Wathen, a member of defendant's firm asked her who would pay for them, and she replied that she would pay for them herself, and that her husband had nothing to do with them. Under this understanding, she purchased from the defendants goods amount-

ing to $1,864.45, and same were charged upon their books to her. It appears that in 1908 the defendants, also charged to Mrs. Wathen the items of goods amounting to $700.95, which in the spring of 1907 had been charged upon their books to Charles Wathen, thus making the total amount of the account charged upon their books to Mrs. Wathen $2,565.30.

The defendants testified that they had sold all these goods to Mrs. Wathen, and that by agreement made with her the goods were pledged or turned over to them for the payment of the entire purchase money of all the goods.

It is contended by counsel for the defendants that all the goods, including those sued for by the plaintiff, were sold to Mrs. Wathen upon her sole credit, and that they should have judgment against her for the balance due thereon, and a lien upon all the goods by virtue of section 4966 *et seq.* of Kirby's Digest. But by virtue of those provisions of the statute no lien is given upon personal property for the payment of unpaid purchase money thereof. *Creanor* v. *Creanor,* 36 Ark. 91; *Bridgeford* v. *Adams,* 45 Ark. 136; *Roach* v. *Johnson,* 71 Ark. 344; *Neal* v. *Cone,* 76 Ark. 273. However, an unpaid vendor of personal property who retains the possession thereof has a lien thereon for the purchase money which he may enforce if there is no contract to the contrary. 35 Cyc. 486. And if the goods purchased are by the vendee pledged to the vendor for the unpaid purchase money, he will have a lien thereon in the nature of an equitable mortgage which he may enforce. *Lee Wilson & Co.* v. *Crittenden County Bank & Trust Co.,* 98 Ark. 379. So that in this case, if the defendants actually sold the goods, including those sued for by plaintiff, to Mrs. Wathen, and retained possession thereof, they would have a lien thereon for the satisfaction of their unpaid purchase money; or, if all these goods were sold to Mrs. Wathen and by her pledged to the defendants for the payment of the unpaid purchase money, then the defendants thereby secured a lien upon these goods which they could enforce in equity. On the other hand, however, if the goods sued for were actually sold to and became the property of Charles Wathen, and were paid for by him, then, without his agreement or consent, they could not be held for the purchase money of other goods which were sold to Mrs. Wathen upon her sole credit, although she may have

attempted to pledge same therefor to the defendants. It was therefore a question of fact as to whether or not, under the testimony adduced upon the trial of this case, the goods sued for by plaintiff were sold to Charles Wathen and paid for by him. The chancellor made a finding to this effect, and upon an examination of the evidence we cannot say that his finding is contrary to the preponderance of the testimony.

These goods sued for were, at the time they were sold by defendants, charged by them upon their books to Charles Wathen, and later they sent to him an itemized statement of their account, in which it appears that they charged these goods to him and insisted upon payment thereof by him, and later he actually paid for them. After these goods were paid for, Mrs. Wathen wanted to purchase from the defendants other goods and the member of the firm from whom she desired to make these purchases, according to his own testimony, before selling to her asked her who would pay for them, and in effect to whom he was selling. She then told him that her husband had nothing to do with the goods that she was then purchasing, and that she would pay for them herself. After this the defendants then charged to her account upon their books the goods sued for, which had been sold by them a number of months prior to that time, and had been paid for in full by Charles Wathen. In giving their testimony, the defendants were unable to explain why they had first charged these goods to Charles Wathen and, after having received payment therefor, charged them again upon their books to his wife. They do not claim that they had any authority, either express or implied, from Charles Wathen to do this. Under this testimony we think the chancellor was well warranted in finding that these goods sued for were actually sold to Charles Wathen, and that he was the owner thereof and entitled to their possession upon his demand.

It is not contended by counsel for the defendants that Charles Wathen is liable for any of the items of goods purchased by his wife after September, 1907. It is conceded, and the defendants themselves so testified, that such items of goods were sold to and bought by Mrs. Wathen solely upon her own credit. It is not claimed that these goods sold to her were in the nature of necessaries for the payment of which her husband would be responsi-

ble by reason of the marital relation, nor is it urged that his wife, either by express or implied authority, purchased these goods as his agent. Where credit is given alone to the wife for goods purchased by her, the husband is not responsible therefor; and especially is this true where such goods have been sold to the wife after notification by the husband that he will not be responsible therefor. Sec. 5215, Kirby's Digest; 15 Amer. & Eng. Enc. Law, 873; *Morris* v. *Root,* 65 Ga. 686; *Woodward* v. *Barnes,* 43 Vt. 330.

It therefore follows that the judgment rendered in favor of Charles Wathen for the recovery of the goods sued for is correct, and the decree is accordingly affirmed.